**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR 15-97 |
| | ) | |
| JARREN BELL | ) | |
| | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR 15-98 |
| | ) | |
| DRAKE CHEADLE | ) | |
| | ) | |

## OPINION AND ORDER

On June 18, 2015, we held a hearing after the Government informed the Court that there existed a potential conflict of interest on the part of Thomas Will, Esquire, who currently is counsel for Defendant Jarren Bell ("Bell") based upon his current and previous representation in state court of Defendant Drake Cheadle ("Cheadle"), who was charged in a separate, but related indictment. Present at the hearing were Defendants Bell and Cheadle as well as their respective defense counsel.

The Government's position is that while Defendants Bell and Cheadle are not co-defendants in the same case, they have been indicted in separate, but related federal criminal cases as a result of a wiretap investigation of suspected illegal drug activity. The Government argues that a potential conflict of interest exists because at the same time Attorney Will is

1

representing Defendant Bell in this federal case, he is representing Defendant Cheadle in an unrelated state court drug case and he has represented Defendant Cheadle a number of times in the past. The Government also explained at the hearing that the wiretap evidence in these cases revealed that Attorney Will is connected with Defendant Bell's girlfriend and co-defendant, Krystal Barretto, and Bell's co-defendant Amanda Santiago in that on April 19, 2015, Ms. Barretto contacted Attorney Will after Ms. Santiago was arrested and Attorney Will told Ms. Barretto to tell Ms. Santiago not to speak to the authorities and to tell the authorities that he was Ms. Santiago's attorney.

Attorney Will explained at the hearing that he did not see any serious potential for a conflict of interest because once he received the Government's motion to disqualify him as Bell's attorney, he had asked Bell if anything would be found on the wiretap evidence that would connect Bell to Cheadle, and Bell told him that there was nothing in the evidence to connect him to Defendant Cheadle. Attorney Schorr, who represents Defendant Cheadle indicated that he had advised his client not to waive any conflict of interest.

At the conclusion of the hearing, we permitted counsel to submit any further information on the issue no later than June 25, 2015. On June 25, 2015, the Government filed a Notice of Supplement Regarding Potential Conflict of Interest whereby it provided the Court with transcripts of two wiretap intercepts of Ms. Barretto's telephone which corroborated the Government's contention at the hearing that Attorney Will had some sort of relationship with Bell's co-defendants Barretto and Santiago. Neither defendant submitted supplemental material.

2

# I. Legal Analysis.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to have assistance of counsel for his defense. See Wheat v. United States, 486 U.S. 153, 158 (1988). Because the purpose of the Sixth Amendment is to ensure that a defendant receives a fair trial, the proper consideration for a court weighing the issue of disqualification of counsel relates to the adversarial process, not on the defendant's choice of counsel. Id. at 159.

> Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Wheat, 486 U.S. at 159. The presumption in favor of defendant's choice of counsel "'may be overcome *not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.* The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.'" United States v. Stewart, 185 F.3d 112, 121-22 (3d Cir. 2000) (alteration in original) (quoting Wheat, 486 U.S. at 164 (1988).

The trial court confronted with the duty of evaluating whether disqualification is warranted also "'has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless any proffered waiver.'" Stewart, 185 F.3d at 122 (quoting United States v. Moscony, 927 F.2d 742, 749 (3d Cir. 1991)). "Moreover, to protect the

critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver." Moscony, 927 F.2d at 749. "Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal." Id. at 748.

While it is true that the typical scenario where disqualification becomes necessary entails an attorney's attempt to represent multiple defendants in the same prosecution, conflicts also have been found to arise where a "defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to concurrent or *prior* representation of another client who is a co-defendant, a co-conspirator *or a government witness*." See Stewart, 185 F.3d at 121 (3d Cir. 2000) (emphasis in original) (quoting Moscony, 927 F.2d at 749).

The Third Circuit has explained that when considering disqualifying counsel before knowing whether an actual conflict will emerge,

> '[the] district court must pass on the issue whether or not to
> allow a waiver of a conflict of interest by a criminal defendant
> not with the wisdom of hindsight after the trial has taken place,
> but in the murkier pre-trial context when the relationships
> between parties are seen through a glass, darkly. The likelihood
> and dimensions of nascent conflicts of interest are notoriously
> hard to predict, even for those thoroughly familiar with criminal
> trials. . . . For these reasons we think the district court must be
> allowed substantial latitude in refusing waivers of conflicts of
> interest . . . in the more common cases where a potential for
> conflict exists which may or may not burgeon into an actual
> conflict as trial progresses. . . .'

4

Voigt, 89 F.3d at 1077 (quoting Wheat, 486 U.S. at 162-64).

We find, based on Attorney Will's current and past professional relationships with Cheadle, as well as his connections to Bell's co-defendants and alleged co-conspirators Barretto and Santiago, that there exists a serious potential for a conflict of interest on Attorney Will's part in this case. Therefore, Attorney Will must be disqualified from serving as counsel for Mr. Bell. An appropriate Order follows:

## ORDER

AND NOW, to-wit, this **3rd** day of August, 2015, it is hereby ORDERED, ADJUDGED and DECREED that Thomas Will, Esquire is disqualified from representing defendant Jarren Bell in this action.

IT IS FURTHER ORDERED that this Court shall have a CJA attorney appointed to represent Defendant Bell unless or until Defendant Bell decides to retain private counsel.

Maurice B. Cohill, Jr.
Senior United States District Judge